UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| EDGAR BERRIOS, INDIVIDUALLY § <br> AND AS NEXT FRIEND ON BEHALF § <br> OF CA. B., CESAR BERRIOS, AND § <br> ESTELA A. QUINTOS LOPEZ, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> DIVERSIFIED MACHINING, INC., § <br> KELLER NORTH AMERICA, INC., § <br> AND LOGICAL SYSTEMS, INC., § <br> § <br> *Defendants*. § | | CASE NO. _____ |

## DEFENDANT KELLER NORTH AMERICA, INC.'S NOTICE OF REMOVAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

Pursuant to the terms and provisions of 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Keller North America, Inc. ("Keller" or "Defendant") in the cause styled *Edgar Berrios, individually and as next friend on behalf of, Estela A. Quintos Lopez, Cesar Berrios vs. Diversified Machining, Inc., Keller North America, Inc., Logical Systems, Inc. et al.* originally pending as Cause No. CC-22-01109-B in County Court at Law No. 2, Dallas County, Texas, files this Notice of Removal of the cause to the United States District Court for the Northern District of Texas. As grounds for removal, Defendant respectfully states as follows:

## I.
## INTRODUCTION

1. This action arises out of a workplace injury sustained by Plaintiff Edgar Berrios while employed by Suncoast Post-Tension, Ltd. ("Suncoast"), a wholly-owned subsidiary of Defendant Keller North America, Inc. Plaintiffs initially filed suit in Texas state court in 2022,

naming multiple defendants—including Keller and Diversified Machining, Inc. ("Diversified"), a Texas-based entity.

2. Although this Notice of Removal is filed more than one year after the commencement of the action, removal is nonetheless timely under the bad faith exception set forth in 28 U.S.C. § 1446(c)(1) and the case law that interprets it. It appears now that, from the outset of the litigation, Plaintiffs lacked any legitimate theory of liability against Diversified but strategically named and retained it in the case for the sole purpose of defeating diversity jurisdiction. Indeed, even in Plaintiffs' Original Petition, Plaintiffs go to great pains to point out that "[u]nder the forum defendant or home-state rule, this case is not removable to federal court because at least one defendant is a Texas resident and citizen." *See* ¶ 1 of Plaintiffs' Original Petition, attached as Exhibit 1, Appendix at 001-013 hereto. Throughout the discovery phase of the litigation, Plaintiffs focused almost exclusively on the conduct of Keller and ignored the conduct of Diversified – even to the point of spending an inordinate amount of time questioning Diversified's corporate representative about "Keller's bad acts" rather than developing evidence of Diversified's potential culpability in the litigation. Now, on the eve of trial,[1] Plaintiffs have settled with Diversified, confirming that Diversified's presence in the litigation served no purpose other than to obstruct federal jurisdiction and manipulate the forum.

3. With the settlement of the only non-diverse defendant, complete diversity now exists between the parties, and the amount in controversy far exceeds the jurisdictional minimum. Accordingly, this matter is properly removable under 28 U.S.C. §§ 1332, 1441, and 1446.

4. In the event Plaintiffs oppose removal and seek to remand this action to state court, Keller respectfully requests the Court allow it an opportunity to fully brief its response in

---

[1] Plaintiffs settled with Diversified on Friday, July 25, 2025, three (3) days before the instant motion was filed.

opposition. Denying Keller the chance to be heard on this issue would be fundamentally unfair and inconsistent with the basic principles of due process..

## II.
## FACTUAL BACKGROUND

5.      On July 18, 2020, Plaintiff Berrios was involved in a workplace injury at Suncoast Post-Tension, Ltd. ("Suncoast") in Irving, Texas. Suncoast is a manufacturer and supplier of post-tension materials and a wholly-owned subsidiary of Keller. Mr. Berrios began his employment with Suncoast in 2010 in the Fabrication Department. Over the course of his tenure, Mr. Berrios was promoted several times and by the time of the incident held the position of Lead Mechanic.

6.      Throughout his time at Suncoast, Mr. Berrios was instrumental not only in designing and constructing the automatic cutline machine central to this case, but also in maintaining and repairing it. When mechanics at other Suncoast facilities experienced issues with cutline machines that they could not resolve, Mr. Berrios was called in to assist due to his extensive experience with the machine.

7.      On the morning of the incident, Mr. Berrios was notified that the mechanics at the Irving facility were experiencing issues with the automatic cutline machines, referred to as the Cutline B ("the Machine"), which consists of two coilers: Coiler #1 and Coiler #2. Mr. Berrios initially began troubleshooting Coiler #2, however, within a few minutes, another employee informed him that Coiler #1 was also experiencing issues.

8.      Before inspecting Coiler #1, Mr. Berrios explicitly instructed the cutline operator to keep the Machine powered on and operational while he worked on its repair, which was in direct violation of Suncoast's lock-out/tag-out procedures. In accordance with Mr. Berrios's direction, the cutline operator left the machine powered on and did not engage the emergency stop (E-Stop) button. Upon examining Coiler #1, Mr. Berrios identified an obstruction in the "pusher." He then

reached into the Machine and lifted the "pusher" to clear the obstruction. Because the Machine remained energized, the Machine immediately resumed operation once the obstruction was cleared, causing the coils to turn and injuring Mr. Berrios's arm in the process.,

9. Shortly after his injury, Mr. Berrios filed a workers' compensation claim. At the time of the injury, Suncoast and Keller were endorsed parties on the same workers' compensation policy provided by Travelers Indemnity Company. As such, Mr. Berrios has since received benefits pursuant to Suncoast and Keller's workers' compensation policy.

### III.
### GROUNDS FOR REMOVAL

10. Pursuant to 28 U.S.C.§ 1332(a)(3), this Court has original jurisdiction over all civil actions between citizens of different states where the amount-in-controversy exceeds $75,000, exclusive of interest and costs. Accordingly, because complete diversity exists and the jurisdiction threshold is met, this matter is removable to this Court under 28 U.S.C. § 1441.

**A.     There is Complete Diversity Between the Properly Joined Parties**

11. There is complete diversity between Plaintiffs and all properly joined parties.

12. For diversity jurisdiction purposes, an individual person's citizenship is established by where that person is domiciled. 28 U.S.C. §1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled). Residence is prima facie evidence of domicile for the purposes of determining citizenship. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).

13. At the time of the initial filing of this action and at the current time of the removal of this action, Plaintiff Edgar Berrios resides in Montgomery County, Texas, at 23915 Paper Wasp

Case 3:25-cv-01962-G    Document 1    Filed 07/28/25    Page 5 of 13    PageID 5

Ln., New Caney, Texas 77357.² Accordingly, Mr. Berrios is a citizen of and permanently domiciled in the State of Texas.

14. At the time of the initial filing of this action and at the current time of the removal of this action, Plaintiff Estela A. Quintos Lopez resides in Montgomery County, Texas at 23915 Paper Wasp Ln., New Caney, Texas 77357.³ Accordingly, Mrs. Lopez is a citizen of and permanently domiciled in the State of Texas.

15. At the time of the initial filing of this action and at the current time of the removal of this action, Plaintiff Cesar Berrios resides in Montgomery County, Texas, at 23915 Paper Wasp Ln., New Caney, Texas 77357.⁴ Accordingly, Mr. Cesar Berrios and thus is a citizen of, and permanently domiciled in the State of Texas.

16. At the time of the initial filing of this action and at the current time of the removal of this action, Plaintiff CA. B. resides in Montgomery County, Texas at 23915 Paper Wasp Ln., New Caney, Texas 77357. Accordingly, CA. B. is a citizen of, and permanently domiciled in, the State of Texas.

17. Under the diversity statute, corporations "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and the State or foreign state where it has its principal place of business..." 28 U.S.C. § 1332(c)(1).

---

² See Exhibit 1, Appendix at 001-013, Plaintiffs' Original Petition at ¶ 4; See Exhibit 2, Appendix at 014-128, Plaintiffs' Third Amd. Original Petition, at ¶ 4.

³ See Exhibit 1, Appendix at 001-013, Plaintiffs' Original Petition at ¶ 5; See Exhibit 2, Appendix at 014-128, Plaintiffs' Third Amd. Original Petition, at ¶ 5.

⁴ See Exhibit 1, Appendix at 001-013, Plaintiffs' Original Petition at ¶ 6; See Exhibit 2, Appendix at 014-128, Plaintiffs' Third Amd. Original Petition, at ¶ 6.

DEFENDANT KELLER NORTH AMERICA'S
NOTICE OF REMOVAL                                                                    PAGE 5 OF 13

18. Defendant Keller is a corporation incorporated under the laws of the State of Delaware, with a principal place of business in Maryland. Thus, it is not a citizen of the State of Texas for purposes of diversity jurisdiction.

19. Removal is thus proper because there is complete diversity between Plaintiffs and the only remaining defendant, Keller.

**B.   The Amount in Controversy Exceeds the Federal Jurisdictional Minimum**

20. Pursuant to 28 U.S.C. § l446(c)(2), if removal is sought based on diversity jurisdiction under 28 U.S.C.§ 1332, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."

21. In their Original Petition, Plaintiffs claim that they "seek monetary relief over $1,000,000."[5] The amount in controversy thus far exceeds the $75,000 jurisdictional minimum of this Court.

**C.   Removal is Timely Pursuant to 28 U.S.C. § 1446(b)(3)**

22. Keller timely removes this case under 28 U.S.C.§ 1446(b) and Federal Rule of Civil Procedure 6(a). Per 28 U.S.C § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant of a copy of an amended pleading, motion, order or **other paper** from which it may first be ascertained that the case is one which is or has become removable." (Emphasis added.)

23. Keller was copied on a notice sent to County Court at Law No. 2, Dallas County advising the court of Plaintiffs' settlement with the only non-diverse defendant in this litigation, Diversified, on Friday, July 25, 2025;[6] the thirtieth day following that notice is Sunday, August

---

[5] See Exhibit 2, Appendix at 014-128, Plaintiffs' Third Amd. Original Petition, at p.12.

[6] See Exhibit 3, Appendix at 129-140, Defendant Diversified's Notice of Settlement.

24, 2025; and the first day that is not a Saturday, Sunday, or legal holiday is Monday, August 25, 2025. Between July 25, 2025 to July 28, 2025, each of the codefendants notified the court through filings of their settlement.[7]

24. Under 28 U.S.C. § 1446(c)(1), a civil action may be removed to federal court on the basis of jurisdiction if the notice of removal is filed within one year of the commencement of the action, or thereafter if the district court's finding that the plaintiff has acted in bad faith to prevent a defendant from removing the action.

25. While this Notice of Removal is filed more than one year after the initiation of Plaintiffs' suit, removal is nonetheless timely because the circumstances of this matter fall squarely within the statutory bad faith exception set forth in § 1446(c)(1) and the caselaw that interprets it.

26. As the Fifth Circuit explained, the key question in determining whether bad faith existed is "what motivated the plaintiff in the past—that is, whether the plaintiff's litigation conduct 'meant to prevent the defendant from removing the action.'" *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019) (citing 28 U.S.C. § 1446(c)(1)).

27. Here, Plaintiffs' conduct from the outset of this litigation demonstrates precisely that. In their original petition, Plaintiffs named three non-resident defendants and one Texas resident defendant—Diversified—a company with no genuine connection to the matter at issue. Instead, Diversified was named solely to destroy diversity and block removal.

28. Plaintiffs' illusory theory of liability against Diversified rested entirely on a pre-suit Rule 202 deposition of David Rodriguez, Safety Director for non-party Suncoast. In that deposition, Mr. Rodriguez mistakenly identified Diversified as the designer and engineer of the automatic cutline machine at issue. Plaintiffs then relied on such testimony to assert claims of

---

[7] *See id.*

negligence and gross negligence, alleging a failure to implement reasonable safeguarding mechanisms.

29.     However, on April 19, 2022—the same day Diversified was served with the lawsuit—Charles Alan Null, owner of Diversified, sent a letter to Plaintiffs' counsel and the court stating that Diversified had no role in the design, engineering, or manufacturing of the machine at issue, thereby refuting Mr. Rodriguez's statements.[8] Mr. Null clarified: "Diversified Machining is a machine shop. We make parts from blueprints provided by our customers…We do not provide engineering services." He further stated that "David Rodriguez…said Diversified Machining designed the automatic cutline for Suncoast. That statement is NOT true."[9]

30.     Thereafter, Terry McCrackin, Vice President of Operations for Suncoast, issued an affidavit on behalf of Suncoast on October 18, 2023 that corrected David Rodriguez's deposition testimony regarding Diversified's role with respect to the automated cutline machine. Specifically, Mr. McCrackin stated that David Rodriguez's statements about Diversified were "incorrect."[10] Despite these unequivocal statements disavowing any potential liability for Diversified, Plaintiffs persisted.

31.     The information gathered through the limited discovery propounded upon Diversified only elucidated the lack of a viable claim. In particular, during the deposition of Diversified's corporate representative Clint Olson, Plaintiffs were again reminded that Diversified played no role in the design, installation, or maintenance of the automatic cutline:

---

[8] See Exhibit 4, Appendix at 141-142, Diversified Machining, Inc.'s Letter to the Court dated April 6, 2022.
[9] *Id.*
[10] See Exhibit 5, Appendix at 143-146., Affidavit of Suncoast Post-Tension, Ltd., ¶ 24.

```
23   Q.  Okay.  I have a few questions to ask you.
24  Does Diversified Machining, Inc. provide professional
25  engineering services?
                                                    Page 277
```

```
1    A.  No.
2    Q.  Does Diversified Machining, Inc. have a
3  professional engineer on staff?
4    A.  No.
5    Q.  Did Diversified Machining, Inc. design the
6  automated cut-line machine for Suncoast Post-Tension?
7         MR. GRINNAN:  Objection, form.
8    A.  No.
9    Q.  Okay.  We've talked a lot about the parts of
10  the machine, the automated cut-line machine, right?
11   A.  Yes.
12   Q.  Do you have the prints for the entire
13  automated cut-line machine?
14   A.  I don't think we do.
15   Q.  Okay.  These lists of parts, how do they get
16  made?  Do you have any designs that Diversified provided
17  to Suncoast that are Diversified designs?
18         MR. GRINNAN:  Form.
19   A.  No.
20   Q.  Does Diversified even have a machine that does
21  designs?
22   A.  No.
23   Q.  I'm going to show you what was previously
24  marked or entered as Exhibit Number 11, DMI 0473.
25   A.  Yes.
                                                    Page 278
```

32.     Plaintiffs' knowledge that they lacked a viable claim against Diversified was belied by the questioning posed to Mr. Olson by Plaintiffs' counsel, who spent the vast majority of Mr. Olson's deposition asking questions about "Keller's bad acts." By contrast, significantly less time was dedicated to developing evidence of Diversified's purported culpability in the litigation.[11]

---

[11] See Exhibit 6, Appendix at 147-296, the Hybrid and Videotaped Deposition of Diversified Machining, Inc. by and through its Designated Corporate Representative Clint Hugo Olson, dated May 23, 2024.

33. Plaintiffs' bad faith is further underscored by their own expert reports, none of which make any meaningful effort to establish, develop, or support any theory of liability against Diversified. In particular, Dr. Jahan Rasty's report references Diversified only in passing—and only to note that certain cutline components were machined by Diversified and that Diversified received an email, which is cited solely to support claims against Keller.[12] Plaintiffs' OSHA/HSE expert omits *any* mention of Diversified.[13] Similarly, the CVI Engineering report references Diversified only to assert that "according to deposition testimony, [Diversified] was involved in the design of the cutline and cutline components," and offers a conclusory statement that neither Keller nor Diversified identified and addressed hazards in the coiler area.[14] These references are speculative at best and rely solely on the inaccurate pre-suit testimony of Mr. Rodriguez, which Plaintiffs were repeatedly informed was inaccurate.

34. Despite the overwhelming evidence that there was no viable claim against Diversified, and despite Plaintiffs' wholesale failure to substantiate a claim against Diversified through expert testimony or other evidence, Plaintiffs maintained their claims until just days before trial, when Diversified and Plaintiffs agreed to a nominal settlement in exchange for dismissal (in sharp contrast to the multiple millions of dollars Plaintiffs seek in this lawsuit). The timing and nature of the settlement with Diversified smacks of gamesmanship: now, at the eleventh hour, under the mistaken belief that all opportunity for removal has been foreclosed, Plaintiffs cut loose the only party tethering this case to state court. This clear attempt to prevent removal is the precise

---

[12] See Exhibit 7, Appendix at 297-337, Jahan Rasty's Expert Report.

[13] See Exhibit 8, Appendix at 338-368, Ben Gibson's Expert Report.

[14] See Exhibit 9, Appendix at 369-445, CVI's Expert Report.

type of conduct the "bad faith exception" was created to prevent. . Accordingly, removal under the bad faith exception to § 1446(c)(1) is both warranted and appropriate.

35. The Fifth Circuit's decision in *Hoyt v. Layne Construction Corp.* is instructive here.[15] There, the court affirmed removal on bad faith grounds when the plaintiffs "knew months beforehand that the evidence would not support the claims" against the non-diverse defendant and "seem[ed] to have pursued their claim…only halfheartedly."[16] Specifically, the *Hoyt* court noted that plaintiffs dismissed the sole non-diverse defendant without receiving any consideration; plaintiffs' witness list did not include any fact witnesses for the non-diverse defendant; and plaintiffs' expert witnesses made no serious effort to establish the non-diverse defendant's liability. Just as in *Hoyt*, Plaintiffs here did not undertake an serious efforts to develop their claims against Diversified, and their experts offered no meaningful opinions to support liability. The evidence overwhelmingly suggests that Plaintiffs kept Diversified in the case "for one purpose and one purpose only—to prevent removal."[17]

36. These facts demonstrate that pursuant to 28 U.S.C.§ 1446(c)(1), Plaintiffs acted in bad faith to prevent Defendant from removing this action. Accordingly, Defendant's Notice of Removal is thus timely.

## IV.
## NOTICE TO STATE COURT

37. A copy of this Notice of Removal is being filed with the Clerk of the County Court at Law No. 2, Dallas County, Texas, and is being served upon all parties, in accordance with 28 U.S.C. § 1446(d).

---

[15] *Hoyt v. Lane Construction Corp.*, 927 F.3d 287, 292-93 (5th Cir. 2019), as revised (Aug. 23, 2019).

[16] *Id.*

[17] *See id.*

## V.
## STATE COURT FILINGS

38. In accordance with 28 U.S.C. Section 1446(a) and the Local Civil Rules of the Northern District of Texas, copies of all executed processes, pleadings and orders, as well as the docket sheet, and an index of all pleadings relating to the Action and previously filed with the County Court at Law No. 2, Dallas County, Texas are attached as Exhibits A-E for the Court's reference.

## VI.
## PRAYER

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Keller North America, Inc. removes this cause from the County Court at Law No. 2 of Dallas County to the United States District Court for the Northern District of Texas and respectfully requests that this Court assume full jurisdiction over the cause herein as provided by law.

Respectfully Submitted,

**GORDON REES**
**SCULLY MANSUKHANI, LLP**

*/s/ Christopher S. Norcross*
**CHRISTOPHER S. NORCROSS**
State Bar No. 24081677
CNorcross@grsm.com
**MICHAEL JOHN RAMIREZ**
State Bar No. 00788238
MRamirez@grsm.com
**JAMES A. LOWERY III**
State Bar No. 00797911
JLowery@grsm.com
**ISABELA A. POSSINO**
State Bar No. 24143306
IPossino@grsm.com
CAROLINE J. BAIRD
State Bar No. 24133391
cbaird@grsm.com
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
(214) 231-4660 Telephone
(214) 461-4053 Facsimile

**ATTORNEYS FOR DEFENDANT**
**KELLER NORTH AMERICA, INC.**

## CERTIFICATE OF SERVICE

On July 28, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Christopher S. Norcross*
**CHRISTOPHER S. NORCROSS**